## ANDERSON v. JOHN A. CASEY CO.

(Supreme Court, Appellate Division, Second Department. January 14, 1910.)

NEGLIGENCE (§ 136*)—ACTIONS—QUESTIONS FOR JURY.

    In an action for injuries from an explosion of gas in a still, evidence *held* to take the question as to whether or not the defendant properly cleaned and ventilated the still to the jury.

    [Ed. Note.—For other cases, see Negligence, Dec. Dig. § 136.*]

    Woodward, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Ida E. Anderson, as administratrix, against John A. Casey Company. From a judgment for plaintiff and an order denying defendant's motion for a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

Edward P. Mowton, for appellant.
De Lagnel Berier, for respondent.

BURR, J. It is conceded that the question of the freedom from contributory negligence of plaintiff's intestate was one of fact for the jury. The negligence of defendant is based upon the claim that it had failed to properly clean out and ventilate a still used for the distillation of resin after it was last used, in consequence of which there was an explosion of gases which were contained in the still, causing injuries to plaintiff's intestate which resulted in his death. It was admitted that carbo-hydrogen gases are produced by such distillation, and that these gases are explosive in character. It was also established, by uncontroverted evidence, that, after the residuum which settles in a still during distillation cools off, no explosive gases are generated.

On the day of the accident plaintiff's intestate and a companion went upon defendant's premises for the purpose of making some repairs to said still. At that time the cover was on, and there was a substance around the edge of it like clay to make it air-tight. Defendant's employés removed the cover, and, upon being assured by defendant's superintendent that there was no gas in the still, plaintiff's intestate entered it, struck a match for the purpose of lighting a candle to see what was to be done, and the explosion instantly followed. The evidence established that the still had been last used some nine or ten weeks prior to the accident. If the evidence were equally clear that after such use the still had been cleaned out and properly ventilated, we think that plaintiff would have failed to make out a case. The evidence upon that point is not of that character. That the still did contain explosive gases was conclusively established by the fact of the explosion.

The testimony of the witness Wagner, called by the defendant, was to the effect that in all his experience, covering many years, he had never known an explosion when the cover of the still had been left off for 24 hours after they had ceased to use the still and the still had been cleaned out. The proper way to clean it was to leave the cover off for about that period of time, and then, after the residuum cooled, with a long-handled spade scrape it from the sides of the still. The only witness who testified to the fact that the cover had been taken off after the still was last used and the residuum spaded out was McGoldrick. He at first said that he did not spade out the still. Afterwards he said that he did. He did say that the cover was off on that occasion for 24 hours, but he failed to state when it was taken off or when it was replaced. The fact that if it was removed and the still spaded out this was done about 10 weeks before the accident, when there was nothing to particularly impress upon his mind the performance of this work, that it was work in which he was constantly engaged, and the further fact that he was responsible for the accident if the still had not been properly ventilated and spaded out, made it necessary that the accuracy of his testimony should be submitted to the jury. He was an interested witness. His testimony that he had spaded out and ventilat-

ed the still was contradicted by the two physical facts, first, that an explosion did occur, and, second, that an explosion would not occur if he had done as he said that he did.

The only other witness called by the defendant was McGuire. He says that he did not spade out the still, and it does not appear that he ever saw any one spading it out. He says that he saw the cover off "afterwards." He evidently assumed that the still had been spaded out because he saw the cover off, but he did not see the work being done, and could not tell how long the still was left uncovered.

The gas was in the still, and it exploded. If the gas would not have been there if the still had been properly cleaned, the fact of the explosion raises an issue, and it was for the jury to say whether the witness was mistaken in saying that he had cleaned it out.

The judgment and order appealed from should be affirmed, with costs.

HIRSCHBERG, P. J., and THOMAS and RICH, JJ., concur.

WOODWARD, J. (dissenting). The plaintiff brings this action to recover damages for the death of her intestate, William M. Anderson, who was on the 3d day of October, 1906, an employé of one Riley, engaged in the manufacture of boilers, etc. On the date mentioned the defendant was engaged in the business of distilling oil from resin at 42 Commerce street, Brooklyn, and for the purposes of its business maintained several cylindrical iron stills or tanks about 7½ feet in diameter and of about the same number of feet in height. These were constructed of cast iron and had dome-shaped tops, with a manhole about 18 inches in diameter. At the center of these dome-shaped tops there is a goose-neck, connected at the top with a copper worm which passes through a tub of water. At the side of the still, near the bottom, is an opening six inches in diameter into which a pipe is fitted containing a pitchcock, through which the residuum of the still is drawn off after the resin is distilled. Some nine or ten weeks before the accident forming the basis of this action, the defendant put through a quantity of resin and drew off the oil, and then cleaned out the tank or still, putting the cover upon the manhole. The still remained in this condition for a period of nine or ten weeks, and then plaintiff's intestate was sent by his employer, with one Perks, to take measurements for the purpose of placing a new bottom in this still; the defendant having requested the work to be done. Anderson and Perks went to the defendant's plant and found James Casey, the acting superintendent, who showed them the still and in their presence directed that the cover be taken from the manhole, which was subsequently done. With the cover off, plaintiff's intestate and Perks asked for a light, and were supplied with a candle and matches by Casey. Anderson and Perks went down into the still, struck a match, and an explosion followed instantly; Anderson receiving injuries which subsequently resulted in his death. The case was submitted to the jury, and that body returned a verdict for the plaintiff, and from this judgment, and the order denying a motion for a new trial, the defendant appeals.

There was some evidence in the case that the heating of resin in the stills for the purpose of extracting the oil resulted in the creation of

an explosive gas, when such gas came in contact with flame; but the evidence was undisputed that no such result followed from the presence of cold resin, and there was no dispute that the still had last been used some nine or ten weeks prior to the accident, and that it was then cleaned out through the pipe at the side, the manhole on top being opened for 24 hours for the purpose of permitting of the use of a long-handled shovel in clearing out the residuum which clung to the sides of the tank, and that since that time the still had been left covered. The particular element of negligence relied upon seems to be that it was claimed that Anderson, before going into the tank, asked Casey, the acting superintendent, if there was any gas in the tank, and that he was assured by Casey that there was not, and that he thereupon went into the tank with the result stated above. It is strongly urged by the defendant that the evidence does not meet the requirement of showing the plaintiff's intestate to have been free from negligence contributing to the accident; that if he, an experienced man in this kind of work, having previously done much of it, had reason to suspect that there was gas in the tank, it was his duty to take steps to satisfy himself, instead of relying on the statement of Casey. I am of the opinion, however, under the facts disclosed by the evidence, it was for the jury to say whether the plaintiff had established the necessary degree of care.

The difficulty in this case is that the evidence fails to disclose any neglect on the part of the defendant of any duty which it owed to the plaintiff's intestate. The evidence in this case is absolutely uncontradicted that the defendant had been running these stills for a period of 20 years; that during that time its employés had been in the habit of going into them for the purpose of chipping out the refuse which accumulated like a crust upon the bottom; that they always used matches and lighted candles for the purpose of doing this work; and that no such accident as that complained of, or any explosion whatever, had ever resulted. All the witnesses who were practical men employed in the work testify to this situation, that for years the men had been going into these tanks under the same conditions which apparently prevailed at this particular tank at the time of the explosion, and that nothing had ever occurred to suggest that there was danger in doing so, and this evidence is not met by the testimony of an expert chemist, who details what might occur with heated resin, etc. Twenty years of actual experience in distilling resin oil, during which time these stills had been entered under similar circumstances by men with lighted candles as an ordinary, everyday affair, with no suggestion of danger in it, brings the case within the rule laid down in many cases that failure to guard against that which has never occurred, and which is very unlikely to occur, and which does not naturally suggest itself to prudent men as something which should be guarded against, is not negligence. Creswell v. United Shirt & Collar Co., 115 App. Div. 12, 14, 100 N. Y. Supp. 497, and authority there cited; Dougan v. Champlain Transportation Co., 56 N. Y. 1, 7; Ayers v. Rochester Railway Co., 156 N. Y. 104, 108, 109, 50 N. E. 960, and authorities there cited.

The fact that an expert, after the accident, might be able to develop

a theory that the tank was in fact a dangerous place to permit the plaintiff's intestate to enter, is not the test of negligence; the question is one of law, whether there was any evidence that the defendant knew, or had reason to know, that there was any danger to be apprehended, and the undisputed evidence is that no such condition existed.

On the contrary, the evidence showed a condition of affairs which would have justified any man in believing that no danger was to be apprehended; 20 years of practical experience in going into these tanks with lighted candles for the purpose of performing work in them was sufficient to convince any reasonable-minded man that there was no reason to expect that an accident would happen on the particular occasion when the plaintiff's intestate was called to take the measurements. "It is a mistake for one to take his stand after an accident and to impute responsibility from a view thus obtained," say the court in Burke v. Witherbee, 98 N. Y. 562, 568. "It is nearly always easy, after an accident has happened, to see how it could have been avoided. But taking our stand before the accident, the very first of the kind, so far as we know, that ever occurred, we can, upon the facts of this case, see no ground for imputing against the defendants the want of that ordinary care, diligence, and foresight which they, as employers, owed to the men in their service."

Clearly the defendant owed the plaintiff's intestate no higher duty than that of an employé, or a passenger upon a steamboat, and in either of these cases it has been held that the defendant is not liable under circumstances such as appear in this case. It was error, therefore, for the court to deny defendant's motion to dismiss the complaint at the close of the evidence.

I think the judgment and order appealed from should be reversed, and a new trial granted.